ALLEN ET AL. *v.* McINTOSH LUMBER Co. ET AL.

[77 South. 909, Division B.]

1. MARRIAGE. *Suit by widow. Evidence of marriage relation.*

In a suit by a widow for the death of her husband, where the defendant pleaded that she was not the lawful wife of deceased, it was reversible error to allow the defendant to show the marriage of a man of a similar name to another woman, and a divorce decree, of such persons rendered after the marriage of plaintiff and deceased, where there was no proof that deceased was ever served with process in the divorce suit or was even the party made defendant in such suit.

2. MASTER AND SERVANT. *Injury to servant. Independent contractor. Burden of proof.*

Where in a suit by a widow for the death of her husband against a lumber company and a paper company, it appeared that the lumber company had entered into a contract with the paper company in which the lumber company was to furnish the paper company slabs from its saws and to furnish the motive power for the operation of the slasher saw and to convey the slabs from the saw of the lumber company to the slasher saw of the paper company and that deceased was employed by the lumber company in operating the carriage that conveyed the lumber from the sawmill to the slasher saws, and was injured by a slab being thrown from the slasher saw back to where he was working, and it further appearing that a third party had been orally contracted with by the paper company to operate the slasher saws and to deliver the slabs at a designated point at so much per cord, he to furnish his own labor. In such case in order for plaintiff to hold the paper company liable it was incumbent upon her to show the terms of such oral contract.

APPEAL from the circuit court of Jackson county.
HON. JAS. H. NEVILLE, Judge.

Suit by Hattie Allen and others against the McIntosh Lumber Company and the Southern Paper Company. The court granted a peremptory instruction for the Southern Paper Company and submitted the case to the jury as to the McIntosh Lumber Company and from a judgment for defendant, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*Mize & Mize,* for appellant.

The first error assigned is that the court erred in admitting in evidence the marriage record or marriage license issued December 26, 1889, to Joseph Allen and Adeline Hotten.

We presume this was admitted to show that in 1889 Adeline Hotten married Jobe Allen, and that, when Jobe Allen married Harriet Turner in 1894, he had a wife living and therefore his marriage to Harriet Turner was null and void.

This was manifest error; because there is not a word of evidence nor a hint of suspicion that Jobe Allen was ever known as Joseph or Joe Allen. The record is complete that the deceased was never called or known by any other name than Jobe Allen, and by what stretch the marriage license issued to Joseph Allen and Adeline Hotten could prove anything against Jobe Allen we are at a loss to understand. We submit that this is clearly reversible error; and we will ask the court to give the record most carful attention to see if it can find any evidence at all that Jobe Allen was ever known as Joe Allen or Joseph Allen.

We submit that it was also error to admit in evidence the record of divorce proceedings between Adeline Allen and Joseph Allen, said suit having been filed at August term, 1896, because there is not a squint of evidence in the record that Adeline Allen was Adeline Hotten or that Joseph Allen named in the proceedings was Jobe Allen, or that Jobe Allen, the deceased, was ever called Joe Allen or Joseph Allen.

The next error assigned is that the court erred in granting a peremptory instruction in favor of the Southern Paper Company. In discussing this assignment, we assume that Parker was the independent contractor of the Southern Paper Company. With this assumption, we contend that the Southern Paper Company is liable

as well as the McIntosh Lumber Company for the injury to Jobe Allen.

The cause of the complaint in evidence is not against Parker's operation of the slasher of the Southern Paper Company at the time of the injury complained of, or that Parker was in any manner negligent or that it was through any fault in the operation of the slasher that Allen was injured; the complaint that there was faulty construction of the slasher and that the Southern Paper Company is liable because it failed to comply with its nondelegable duty of placing guards or aprons around the slasher, between the slasher and the live rollers where deceased had to work; in other words, the complaint is faulty construction of the slasher by the Southern Paper Company.

Of course, we would not contend for a moment, if the injury to Allen had occurred on account of faulty operation or negligence in the active operation of the slasher by Parker—if the slasher had been properly constructed—that then the Southern Paper Company would be liable; but we submit that the law is that a proprietor cannot lease to an independent contractor and escape liability to a third person injured when the injury grew, not out of the negligence of the independent contractor in the active operation of the machinery, but out of an inherent defect in the construction of the machinery by the proprietor.

Now, the question at bar is: Is the Southern Paper Company liable to appellants for the death of Jobe Allen, an employee of the McIntosh Lumber Company, who was killed at a time when the slasher of the Southern Paper Company was being operated in the ordinary manner by an independent contractor, as a proximate result of said slasher not being guarded, and at a time when Jobe Allen was at his proper place and at a time when the Southern Paper Company knew that the employees of McIntosh Lumber Company worked in close proximity to said slasher?

We contend that the authorities are unanimous in support of liability. Thompson on Negligence (2 Ed.), p. 647, lays down the following: "Proprietor continuously liable for his own negligence. If the negligence of the proprietor and not that of the contractor is the proximate cause of the injury then the proprietor will be liable to the person injured."

We think this is applicable exactly here, in that the negligence of the proprietor, the Southern Paper Company in not having a guard was the proximate cause of the injury.

Also, Thompson on Negligence (2 Ed.), section 650, at p. 591, which is as follows: "Proprietor liable where the injury proceeds from the nature of the work itself.— It is merely another way of stating the preceding proposition to say that the proprietor is liable on the principle of being answerable for his own negligence, where the injury proceeds from the nature of the work itself, and not from the manner in which the independent contractor has executed it. If, for any reason, the nature of the work is such that when done in the ordinary mode, it is necessarily or naturally injurious in a legal sense, to a third person, the proprietor must answer to him in damages for it.

This is exactly the state of affairs here. This work was necessarily dangerous when done in the ordinary mode. Why? Because the slasher was not guarded. At the time of the injury to Allen the slasher was being operated in the ordinary manner. That it was necessarily dangerous when being operated in the ordinary manner, the facts of the injury disclosed by the record conclusively show; and that it was realized as such is shown by the fact that it has since been guarded, as shown by the record. Section 652, Thompson on Negligence (2 Ed.), p. 592; Thompson on Negligence, (2 Ed.), sec. 4931; *Sullivan* v. *New Bedford Gas & Edison Light Co.*, 190 Mass. 288; *Kanz* v. *J. Niels Lumber Co.*, 3 Neg. & Comp. Cases, p. 53, 114 Minn. 466;

*Lawerenoe* v. *Shipman,* 39 Conn. 586; *Crisler* v. *Ott,* 72 Miss. 169; *Earl* v. *Reid,* 18 A. & E. Ann. Cas., p. 1; *Bower* v. *Peate,* 1 Q. B. 321; *Kirk* v. *Toronto,* 8 Ont. (L. R.) 730; *Thomas* v. *Hammer Lumber Company,* 32 L. R. A. 584; *Davis* v. *Summerfield,* 133 N. C. 325, 63 L. R. A. 492; *Covington* v. *Steinbrock,* 61 Ohio 215, 76 Am. St. Rep. 375, 55 N. E. 618.

Summing up the liability of a proprietor for the injury of a third person injured in the course of the operation of an appliance in the ordinary manner by an independent contractor, we submit that the law is, that the proprietor cannot let a dangerous premise to an in-independent contractor and not be liable for the injury by the ordinary operation of said premises by the independent contractor on account of a defect in the premises.

We therefore submit that this case should be reversed as to the Southern Paper Company also for this error. The Southern Paper Company knew or should have known that the slasher, which had been in operation for two years, was in close proximity to the live rollers of the McIntosh Lumber Company, where the McIntosh Lumber Company's servants, including Jobe Allen, had to work; and there was no excuse for such unguarded condition.

*White & Ford,* for appellees.

The case made by this record is exceedingly weak on the question of liability. There was no negligence shown in the construction or operation of the slasher. How can it be said that the machine is manifestly dangerous in the face of the proof that it threw one slab, contrary to the manner in which it was supposed to work in from three to five years continuous operation. It was not disputed that this slasher was constructed in the same manner as the only other slasher in use in Moss Point and vicinity. It was in testimony that the same slashers were in operation at the Bounds mill and

the Dantzler mill, That in neither of these was any screen, or guard placed between the slasher saws and persons working in the mill, but the construction of the machine was such that any slabs that might get caught in the saws would be thrown out of the building instead of into it, and there was an opening in the wall of the mill through which slabs were calculated to pass, thus going outside, instead of through the interior of the building. An employer is not a guarantor of the safety of his employees, but only owes them the duty of furnishing them a reasonably safe place in which to work. This rule would apply as to the McIntosh Lumber Company, but not as to the Southern Paper Company, between whom and the deceased Allen there existed no contractual relation whatever, or even between the deceased Allen and the independent contractor Parker, so far as that is concerned:

Learned counsel for appellant has cited no case and cannot cite any which holds that the mere happening of one dangerous incident in a period of from three to five years operation of a machine, contrary to the usual method of operation, that would justify the characterization of such machine as dangerous. The test as stated by Thompson in his Commentaries on the Law of Negligence in Vol. 8, section 28, is:

"A person is required to anticipate and guard against what usually happens or is likely to happen; but this does not require him to anticipate and provide against that which is unusual and not likely to happen, or that which is only remotely and slightly probable. The general test in such cases is, not whether the injurious result or consequence was possible, but whether it was probable; that is, likely to occur according to usual experience."

The questions which we have discussed up to this point are to an extent of academic interest only so far as the Southern Paper Company is concerned, for the reason that all were questions for the jury, and the case

was not submitted to the jury as to the Southern Paper Company, because of another point which we shall now consider, namely, that the slasher was, according to undisputed proof, being operated by an independent contractor.

Learned counsel for appellants discusses this question at length, and, in presenting it in his brief, admits that Parker was the independent contractor for the Southern Paper Company and admits further that he would not contend that the Southern Paper Company was liable for any injury, that occurred to Allen on account of faulty operation of the slasher by Parker. He seeks to charge the Southern Paper Company with liability on account of alleged faulty construction of the slasher.

Of course the proprietor is ordinarily not liable for injury resulting from work performed by an independent contractor, but they then seek to fasten liability upon appellees by trying to bring it within one of the well known exceptions to the rule limiting the liability of a proprietor.

We shall begin this discussion by quotation of the approved list of exceptions to the rule of nonliability of a proprietor found in section 645, Vol. 1, Thompson's Commentaries on Negligence.

"As well stated in recent cases in New York there are but three cases in which the owner of fixed property is responsible for acts done upon it which result in injury to another, namely, first, where the person doing the act stands towards the proprietor in the relation of employee or servant; second, where the act was authorized by a contract between the proprietor and actor necessarily produced the injury; and third, where the injury was occasioned by the omission of some duty imposed on the proprietor."

It is clear that this case does not fall within the first exception, nor does it come within the other two, as we shall undertake to show. Dealing first with the authority cited by learned counsel for appellants. They

quote section 647, Thompson's Commentaries on Negligence, as follows: "If the negligence of the proprietor and not that of the contractor is the proximate cause of the injury, then the proprietor will be liable to the person injured."

They contend this is applicable here. Counsel did not go far enough with the quotation, as is shown by another part of the paragraph which immediately follows their quotation: "Thus, if the contractor merely engages to do certain work on a building, e. g., the brickwork, under the direction of an agent of the proprietor, e. g., an architect, and the building falls in consequence of a defect in the plan furnished by the architect, the contractor will not be liable to a third person so injured, for this would reverse the rule and and make the inferior liable for the acts of the superior."

It is manifest therefore that the text cited by counsel contemplates a case where negligence of the proprietor's agent, namely, the architect, caused the injury. Counsel next cite section 650 of Thompson's Commentaries on Negligence. For the sake of brevity, we shall not quote the part of the section cited by counsel, but merely take it up where they left off. "Thus where one who had contracted with the Water Board of a city to build a sewer was required by the terms of the contract to remove "Sheath Piling" and in consequence of doing so an adjoining building settled and was injured, the city was held liable for the damages."

Counsel next cites the case of *Sullivan* v. *New Bedford Gas & Light Company,* 190 Mass. 388. That case will be found in a note in Vol. 3, page 73, Negligence and Compensation Cases Annotated. Likewise the case of *Kanz* v. *Niel Lumber Company.* Neither of these cases have any application here, for the reason that both of them were decided under a statute which absolutely require the proprietor of fixed machinery to guard and screen it.

The case of *Lawerence* v. *Shipman,* 39 Conn. 586, cited by counsel deals with a case where the work assigned to the contractor is inherently and necessarily dangerous, exposing others to "unusual peril," In the case we have here, there was an exceedingly simple machine, which consists only of an inclined platform on which five saws on one axle revolved in a perpendicular plane. The machinery was fixed and immovable and was designed simply for the cutting of slabs into proper lengths. The slabs were carried against the saws by slowly moving endless chains. The machinery was so situated that if perchange anything got hung in the saws, it would be thrown outside the mill through a large opening in the wall. If the slab which hit Allen came from the slasher saw; it did an unprecedented thing and was an accident, purely and simply.

The case of *Crisler* v. *Ott,* 72 Miss. 189, was a case where the court held that the contractor and proprietor were joint trespassers. The case of *Earl* v. *Ried,* 19 A. & E. Anno. Cases, involved a really dangerous situation where a four-story building was altered. The court especially held that the work was "intrinsically dangerous."

The case of *Bower* v. *Peate,* while good authority on the principle it decides, has no application here, as there are no "injurious consequences that must be expected to arise to neighbors."

The celebrated case of *Dalton* v. *Angus,* is an ancient but good authority that involved a case of inherently dangerous work. The same may be said of *Kirk* v. *Toronto* cited by counsel.

Counsel for appellants rely most strongly on the case of *Thomas* v. *Hammer Lumber Company,* 32 L. R. A. 584. They quote extensively from the opinion there. That was a fire case and is entirely in line with a multitude of other authority in that class of cases. The liability of the proprietor was placed by the court on its failure to remove from its railroad right of way a mass,

of inflammable material which constituted an ideal situation to cause the origin and spread of fire.

All cases cited by counsel deal with and sustain the general principle that where the work is inherently dangerous and necessarily calculated to cause injury to others, the proprietor cannot escape liability. A multitude of such authority is to be found in the law books. The most typical instances dealt with by such cases are the setting out of fires without proper means of protecting adjacent property, depriving buildings of lateral support, building operations in general, mining and smelting, making excavations in streets, and the erection of nuisances. In all such cases the courts place the liability of the proprietor on the principle that the work is inherently and necessarily dangerous.

The question of liability of proprietors for injuries resulting from work committed to independent contractors is thoroughly discussed in chapters 19 and 20 of Thompson's Commentaries on the Law of Negligence.

Learned counsel for appellants seek to place this case in the same category as that of inherently dangerous work. Now, there is nothing inherently dangerous in the sawing of slabs, but this class of work is frequently and widely done in certain sections of the country. Counsel has cited no case which holds that such work is inherently dangerous, nor has he found authority which is in point on the precise question here involved.

Coming now to the authorities relied on by us as establishing the true rule in this case, we cite first, section 621, Thompson's Commentaries on Negligence, as follows: "It is a general rule that one who has contracted with a competent and fit person exercising an independent employment, to do a piece of work not in itself unlawful, or of such nature that it is likely to become a nuisance or to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control, except as to the result of the

work and subject to the other qualifications hereafter stated, will not be answerable for the wrongs of such contractor, his subcontractors, or his servants committed in the prosecution of such work." *Callahan* v. *Matthews,* 87 Hun. 527; *Griffin* v. *Light Co.,* 92 A. S. R. 548; *Light Co.* v. *Maxwell,* 65 S. W. 78; *R. R. Co.* v. *Madden,* 17 L. R. A. (N. S.) 788. On the general question of liability in this case, we cite; *Hexmer* v. *Webb,* 54 Am. Rep. 703; *King* v. *R. R.,* 23 Amer. Rep. 37; *Engle* v. *Eureka Club,* 33 A. S. R. 692; *Leavitt* v. *Ry. Co.,* 36 L. R. A. 382; *Berg* v. *Parsons,* 41 L. R. A. 391; *N. & W. R. R. Co.* v. *Stevens,* 46 L. R. A. 367; *Ry. Co.* v. *Farner,* 60 Am. Rep. 696; *Richmond* v. *Sitterding,* 65 L. R. A. 445; *Robideaux* v. *Herbert,* 12 L. R. A. (N. S.) 632; *Revier* v. *Detroit Steel Spring Co.,* 67 N. W. 120.

In conclusion, we submit that the case should be affirmed as to both appellees.

*F. S. McInnis,* for appellee.

There was no error in admitting the marriage record of Jackson county, showing the issuance of a license to and the marriage of Joseph Allen and Adeline Hotten. Two witnesses swore positively that Jobe Allen, for whose death this action was brought, and Adeline Hotten were married, that Joe Allen was the same man who married Adeline Hotten and afterwards married Harriet Turner one of the appellants. If these witnesses were believed it would establish as a fact that "Jobe" Allen and "Joseph" Allen were one and the same man, and further that "Jobe" Allen applied for a marriage license under the name of "Joseph" Allen.

The record of the suit for divorce brought by Adeline Allen against Joseph Allen was properly admitted in evidence. When Adeline Hotten married Joseph Allen she became *ipso facto* Adeline Allen. It was not then necessary to identify her as Adeline Hotten because

she was not Adeline Hotten but was Adeline Allen, and that name sufficiently identified her.    There was no error committed in granting instruction No. 3 as requested by appellee.    The instruction reads:

"The court instructs the jury for the defendant, McIntosh Lumber Company, that unless the plaintiffs in this cause prove by a preponderance of the evidence in this case to your satisfaction that the injuries alleged to have been received by Jobe Allen, were received as a result of the negligence of this defendant, and that such injuries were the direct and proximate cause of the death of Jobe Allen, then it is your sworn duty to find for the defendant."

This instruction correctly announced the law in this case.    We submit that it is the law when one suing for the death of a person alleged to have been killed by the negligence of the person sued that he must prove by a preponderance of the evidence that the negligence of the defendant was the direct and proximate cause of the death of the person killed.    There can be no controversy as to that.

Now by this instruction the court informed the jury correctly as to the law in the case. It is not similar to the *Hamel Case,* 74 So. 276, cited by counsel for appellants, in this: the Hamel case instruction told the jury that even if they believed that the defendant was negligent and from all the evidence in the case they were unable to say what caused his death, they must find for the defendant; in the instant case they were merely told that they must believe that Allen was injured as a result of the negligence of this defendant and that such injuries must have been the direct and proximate cause of his death.    The instruction did not state that the injuries had to be the sole cause of the death.    In this instruction the words "direct" and "proximate" mean the same thing.    32 Cyc. 745.    Proximate cause.    "An act which directly produced or concurred directly in producing the injury."

We submit there was no error in granting this instruction because it announced the true rule in the absence of any evidence that the injuries did aggravate his condition and hasten his death, because plaintiff requested no instruction announcing the rule that plaintiff would be entitled to recover if the injuries aggravated his condition and hastened his death, and there was no evidence in the case on which to base such an instruction, and because the instruction properly and correctly informed the jury on whom the burden of proof in the case rested.

Instruction No. 7 given for appellee which reads as follows: "The court instructs the jury for the defendant, that if you believe from the evidence that the slasher saws installed in the mill of McIntosh Lumber Company by the Southern Paper Company were standard equipment constructed and installed in the manner usually prevailing in work of the character which they were designed to perform, and that they were not dangerous machinery to any employee of the McIntosh Lumber Company who was required to work at the place where Jobe Allen was working when he is alleged to have received injuries by being struck with a piece of slab or wood thrown from said saws, then it is your duty to return a verdict for this defendant."

The gist of the complaint is that the machinery was dangerous and made the place where Jobe Allen was at work not reasonably safe. If the slasher saw was not dangerous machinery to any employee of the McIntosh Lumber Company who was required to work at the place where Jobe Allen was working when he was injured, that place was surely a reasonably safe place in which to work. How could it be a place not reasonably safe if the saws complained of were not dangerous machinery to one working at that place.

Appellants' charge of negligence against this appellee in all three counts of the declaration was that the place where Allen was working when injured was made not

reasonably safe on account of the erection of the slasher saw near said place. The slasher was erected, as is shown by the evidence in the case, in the manner usually prevailing in erecting machinery of like kind and description and usually used for the purposes for which this machine was erected, and that it did not make the place where Allen was working not reasonably safe. The fact that Allen was injured is not proof that it was negligence to place the machine at the particular place in the mill of appellee where it was placed nor is it proof that its operation without a fender or guard was negligence on the part of this appellee. That question was one for the determination of the jury under proper instructions of the trial court, and we submit in all earnestness that the instruction complained of correctly announced the law covering that particular point.

Appellant's ninth assignment of error is that the court erred in granting instruction No. 8 as requested by appellee. The instruction reads: "The court instructs the jury that, in order to warrant a verdict against the defendant, McIntosh Lumber Company, it is incumbent on plaintiffs to show: First, that they are the lawful wife and children of deceased, Jobe Allen; second, that he was killed by the slasher mentioned in the declaration; third, that the slasher was dangerous and that its operation rendered the place where Jobe Allen was at work not reasonably safe; fourth, that the defendant McIntosh Lumber Company knew, or by the exercise of reasonable care should have known, that said place was not a safe place in which to work. And if the evidence fails to show either of said propositions to be true, the jury should find a verdict for the defendant."

The instruction is manifestly the whole law in this case. In all actions for the death of a party caused by negligence these propositions must be proved by a

preponderance of the evidence to the satisfaction of the jury in order to warrant a verdict for the plaintiff.

We insist, that in the instant case before plaintiffs could recover a judgment against this appellee, it would have been incumbent on them to show, first, that Allen was the husband of Hattie Turner and the father of the other plaintiffs; second, that he was injured by the machine as alleged; third, that the injury was the cause of his death, not the sole cause, but that it caused his death; fourth, that the injury was caused by the negligence of this appellee; fifth, that this appellee knew, or had reason to know that the conditions which caused the injury were in existence, if the injury was in fact caused by the negligence of this appellee. Failing to show these propositions to be true would entitle this party to the suit to a peremptory instruction.

We submit that the verdict reached in this case under the evidence was the only verdict that could have been reached in justice to the parties and under the law.

ETHRIDGE, J., delivered the opinion of the court.

This a suit brought by Hattie Allen and her children for injuries to Jobe Allen, her husband and the father of the children, resulting in his death. Suit was filed against the McIntosh Lumber Company and the Southern Paper Company. It appears that the McIntosh Lumber Company entered into a contract with the Southern Paper Company, in which the McIntosh Lumber Company was to furnish the Southern Paper Company slabs from its saws and furnish the motive power for the operation of the slasher saw and to convey the slabs from the saw of the McIntosh Lumber Company to the slasher saws of the paper company. Jobe Allen was employed by the McIntosh Lumber Company in operating the carriage or roller that conveyed the lumber from the sawmill to the slasher saws,

and was injured by a slab being thrown from the slasher saw back to where he was working, striking him on the head. It appears that in erecting the slasher saws no fender or guard was placed between the slasher saw and the place where Jobe Allen worked, and that such fender would have prevented the injury. It further appears in the record from one of the witnesses for the defendant that the slabs when struck by the slasher saws were liable to be thrown in any direction. It further appears that one Parker had been contracted with by the paper company to operate the slasher saws and to deliver the slabs at a designated point at so much per cord, he to furnish his own labor. The details of the contract between the paper company and Parker is not in the record. There was no written contract, but a verbal contract, and the full details and understanding was not developed satisfactorily. The defendants also defended upon the ground that the plaintiffs were not the lawful wife and children of the deceased, and not therefore entitled to sue for any injuries to him. At the conclusion of the plaintiffs' evidence the court granted a peremptory instruction for the Southern Paper Company and submitted the case to the jury as to the McIntosh Lumber Company. The proof of the plaintiffs shows clearly and unequivocally that Jobe Allen married Hattie Allen, and that they lived together as husband and wife and raised a large family. The proof for the plaintiffs also showed that Jobe Allen had a brother named Joe Allen, who married Adeline Hotten in 1889. There were two witnesses for the defendant, who testified that Jobe Allen was the man that married Adeline Hotten, and that they were present on the occasion of the marriage. The defendants introduced in evidence the marriage license, with return of the minister certifying that he had joined in matrimony Joseph Allen and Adeline Hotten. This marriage license was objected to, and there was no proof that Jobe Allen was the party who

procured this license. The defendants also introduced in evidence a bill for divorce filed by Adeline Allen against Joseph Allen in the chancery court of Jackson county, Miss., at the August term, 1896. This bill was filed on the 11th day of May, 1896, and the bill alleges that Adeline Allen was married to Joseph Allen in the month of December, 1888, in Jackson county, and that the place of residence of Joseph Allen was unknown. A decree was granted, reciting proof of publication, but no publication appears in the record. A decree grants a divorce to Adeline Allen and Joseph Allen. This marriage license and bill and decree for divorce was objected to by the plaintiffs, and at the close of the evidence the court was moved to strike the same from the record, but the court overruled the objections and refused to strike the said papers from the record, and submitted the question to the jury as one of the issues in the case.

We are unable to say that the submission of this question did not contribute to the finding for the defendants. It may have been the sole reason for so finding. We think it was error to offer this marriage license and this bill for divorce in evidence. How a bill for divorce could even tend to prove the issue in this case we are unable to see. It appears from the testimony of the attorney who filed the bill that Jobe Allen was living in the county at the time of the filing of the suit, and that he knew Jobe Allen, and that Jobe Allen was not the man named as the defendant in the suit. There was no proof whatever that Jobe Allen was served with process, or that he was the party intended as the defendant in said divorce suit. In *Alabama & V. Ry. Co.* v. *Beardsley,* 79 Miss. 417, 30 So. 660, 89 Am. St. Rep. 660, this court decided that, where a party is shown to have been married to one party and subsequently married to another party, a divorce would be presumed in favor of the validity of the last marriage. So but for the introduction of this

alleged bill for divorce the court would have been bound to instruct the jury on this record that the plaintiffs were entitled to bring the action as the wife and children of the deceased.  This instruction was requested by the plaintiffs and refused by the court presumably upon the theory that the bill for divorce and decree there rendered was competent evidence to establish the fact that no divorce had been obtained at the time of the marriage between the deceased and plaintiff Hattie Allen.  For these errors the judgment must be reversed as to the defendant McIntosh Lumber Company.

We think the plaintiff failed to show the nature of the contract between the Southern Paper Company and Parker, and that it was the duty of the plaintiff to develop the terms of this contract, and that for the reason that it does not satisfactorily appear that the judgment rendered for the Southern Paper Company was error, judgment as to that company will be affirmed.

Reversed and remanded as to the defendant McIntosh Lumber Company.

*Reversed and remanded.*