LADNER *et al v*. PIGFORD.*

(Division B. March 23, 1925.)

[103 So. 218. No. 24779.]

MARRIAGE. *Every reasonable presumption indulged in favor of cere-monial marriage; divorce presumed in favor of validity of cere-monial marriage; presumption of validity prevails over presump-tion of life; on proof of ceremonial marriage, proof that former husband procured divorce after second marriage of wife does not overcome presumption that timely divorce was obtained.*

Where a marriage is contracted ceremonially, every reasonable presumption will be indulged in favor of its validity. The court will presume a divorce in favor of the validity of the marriage where there was a former marriage existing where there is no proof showing that a divorce was not obtained. The presumption of validity in favor of the second marriage so contracted will prevail over the presumption of life also. Where the proof shows such marriage duly solemnized, proof that the husband by the first marriage procured a divorce after the second marriage of the wife will not be sufficient to overcome the presumption that a divorce was obtained, where the proof is silent as to whether the wife had or had not procured such divorce. *A. & V. Ry. Co., v. Beardsley*, 79 Miss. 417, 30 So. 660, 89 Am. St. Rep., 660, and other cases cited.

*Headnote 1. Marriage, 26 Cyc., pp. 880, 877.

APPEAL from chancery court of Pearl River county.

HON. T. P. DALE, Chancellor.

Suit by Horace E. Ladner and others against A. A. Pigford, in which defendant filed a cross-bill. From a judgment for defendant, complainants appeal. Reversed and remanded.

*W. A. Shipman*, for appellants.

There is only one material issue presented on this ap-peal: The legitimacy *vel non* of the appellants. If the

facts and circumstances, aided by the presumptions of law, establish the legitimacy of the appellants, then it follows necessarily that the court below was in error in deciding the case adversely to the appellants. We believe the ceremonial marriage celebrated between the parents of the appellants to be valid as such. There is no intention on the part of appellants to take any issue on the fact of the first marriage.

The presumption is that the wife obtained a divorce before contracting the marriage with Jonathan Ladner. From the time of the separation to the date of the marriage with Ladner was about ten years; surely she had ample time and opportunity to have secured such a divorce. The burden of proving that she did not do so is on the appellee, and this he utterly failed to do. The fact that she received news of Cunningham's death just a short time before her marriage to Ladner does not even tend to weaken this presumption. A leading case in this state, which is in accord with the general rule and great weight of authority, is that of *A. & V. Co.* v. *Beardsley,* 74 Miss. 417, 30 So. 660. See, also, *Goodwin* v. *Smith,* 72 Ind. 113, 37 Am. St. Rep. 144; *Boulden* v. *McIntyre,* 119 Ind. 574, 21 N. E. 445; *Hull* v. *Rawls,* 27 Miss. 471; *Spears* v. *Burton,* 31 Miss. 547; *Colored Knights of Pythias* v. *Tucker,* 46 So. 51; *Sullivan* v. *Grand Lodge* (Miss.), 52 So. 360; *Bennett* v. *State* (Miss.), 56 So. 777; *Howard* v. *Kelly* (Miss.), 71 So. 391; *Allen* v. *McIntosh Lbr. Co.* (Miss.), 77 So. 909.

All of the authorities are in agreement on the proposition and in holding that the fact of the record of an undefended divorce proceeding is no evidence that a marriage between the parties ever occurred. We submit the same to be true relative to an undefended divorce proceeding, that such a record is no evidence that no divorce had been obtained by one of the parties contracting a second marriage. *Hickman* v. *Hickman,* (Miss.), 89 So. 6; *Aldridge* v. *Aldridge,* 116 Miss. 385.

General Rule. The law and public policy favor marriage, and when the celebration is once shown, the con-

tract of marriage, the capacity of the parties, and, in fact, everything necessary to the validity of the marriage, in the absence of proof to the contrary, will be presumed. This presumption of legality is one of the strongest known to the law, especially where the legitimacy of children is involved; for the law presumes morality and not immorality, marriage and not concubinage, legitimacy and not bastardy. 18 R. C. L., sec. 39, p. 416; *Gaines* v. *New Orleans,* 18 L. Ed. (U. S.) 950; *Hunter* v. *Hunter,* 111 Cal. 261, 52 Am. St. Rep. 180; *Pittenger* v. *Pittenger,* 28 Colo. 308, 89 Am. St. Rep. 193; *Jones* v. *Gilbert,* 135 Ill. 27, 25 N. E. 566; *State* v. *Wothingham,* 23 Minn. 528; *Johnson* v. *Johnson,* 30 Mo. 72, 77 Am. Dec. 598; *Haynes* v. *McDermott,* 91 N. Y. 451, 43 Am. St. Rep. 677; *In re Estate of Megginson,* 21 Ore. 388, 28 Pac. 388.

Again, the general rule may be stated thus: If it is shown that a party to a marriage has contracted a previous marriage, and that his or her former spouse is still living, this does not destroy the *prima-facie* validity of the second marriage. In such case it is presumed that the first marriage has been dissolved by divorce, and the burden to show that it has not rests on the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Here the presumption of the continuance of the first marriage is made to yield to the presumption in favor of the validity of the second marriage and the innocence of the parties to it. *Boulden* v. *McIntyre, supra; Blauchard* v. *Lambert,* 43 Iowa 228; *Carroll* v. *Carroll,* 120 Tex. 731; *Hull* v. *Rawls, supra; Spears* v. *Burton, supra; Railway Co.* v. *Beardsley, supra* (cited and followed in all later Miss. cases); *Schimmesseur* v. *Batrie,* 147 Ill. 210; *Pittenger* v. *Pittenger, supra; Erwin* v. *English,* 61 Conn. 502; *Wenning* v. *Teeple,* 144 Ind. 189, 41 N. E. 600; *Tuttle* v. *Raish* (Iowa), 90 N. W. 66; *Waddington* v. *Waddington,* 21 Mo. App. 609; *Hadley* v. *Rash,* 21 Mont. 170, 69 Am. St. Rep. 649; *Goldwater* v. *Burnside,* 22 Wash. 215, 60 Pac. 409;

*Bull* v. *Bull* (Tex. Civ. App.), 68 S. W. 727; *Murchison* v. *Green*, 128 Ga. 339, 11 L. R. A. (N. S.) 702; *Johnson* v. *Johnson*, 114 Ill. 611, 55 Am. St. Rep. 883; *Smith* v. *Fuller* (Iowa), 16 L. R. A. (N. S.) 98; See also, Case Notes: 14 L. R. A. 540; 72 Am. St. Rep. 562; *Howard* v. *Kelly*, 111 Miss. 285, 71 So. 391, which is cited, approved and followed in later cases, see, 85 So. 75, and 89 So. 7.

The usual presumption of law is that a fact continuous in its nature, such as marriage, continues after its existence is once shown, but the presumption in favor of the validity of a marriage attaches with full force to the latest marriage, and the presumption of the continuance of the first marriage is not equal in probative force to the presumption of the legality of the second marriage. 18 R. C. L., sec. 40, pp. 416-417; *Smith* v. *Smith*, 1 Tex. 621; See, Case Note, 19 Am. St. Rep. 409.; *Railway Co.* v. *Beardsley, supra; Col. K. of P. Lodge* v. *Tucker, supra; Howard* v. *Kelly, supra; Aldridge* v. *Aldridge, supra; Allen* v. *McIntosh, supra; McCallum* v. *Spinks, supra.*

Where it appears that the parties of a former marriage were alive at the time of a subsequent marriage of one of them to another person, it will be presumed that there has been a divorce before the second marriage. 18 R. C. L., sec. 41, p. 417; *Goset* v. *Goset,* 112 Ark. 47; *Shepard* v. *Carter,* 86 Kan. 125, 38 L. R. A. (N. S.) 568; *Schaffer* v. *Richardson,* 125 Md. 88, 1915-E L. R. A. 186; See Case Note, 57 Am. St. Rep. 456; 89 Am. St. Rep. 199; 18 R. C. L., sec. 43, pp. 418-19; *Potter* v. *Clapp* (Ill.), 96 Am. St. Rep. 322; *Railway Co.* v. *Beardsley, supra; Col. K. of P.* v. *Tucker, supra; Howard* v. *Kelly, supra.*

Nowhere in the record is it shown that the mother of the appellants failed to obtain a divorce from Cunningham before her marriage to Ladner. In the absence of such negative proof the presumption of a divorce becomes and is conclusive. This presumption is put into operation by virtue of the law itself, and is not dependent in any wise upon the allegations contained in the pleadings.

*C. G. Mayson,* for appellee.

Brief not available to the reporter.

ETHRIDGE, J., delivered the opinion of the court.

Appellants filed a bill for the partition of lands against the appellee setting up in their bill that they were the children of Jonathan Ladner, and were each entitled to an undivided one-twelfth interest in certain lands described in the bill. Complainants further alleged that their father, Jonathan Ladner, had nine sons and daughters by a previous marriage, and that petitioners were the children of his second marriage. Complainants further alleged that the defendant had acquired title of the nine children of Jonathan Ladner by his first marriage either by direct or mesne conveyances.

The defendant answered the bill, denying that, complainants were entitled to an undivided interest in said lands, asserting that he, the defendant, was the exclusive owner thereof. Defendant further alleged by way of cross-bill that a partition suit was filed for division by the heirs of Jonathan Ladner, and that said lands were sold to one T. H. Davis, who in turn conveyed to the defendant. Defendant further alleged in his crossbill that complainants were not the legal heirs of Jonathan Ladner; that as a matter of fact the mother of complainants undertook to contract a marriage with Jonathan Ladner, but that same was illegal and void; that she had previously contracted marriage with one E. M. Cunningham in Jasper county, Miss., in the year 1876, and had lived with Cunningham as his wife until the year 1881, when she abandoned Cunningham and refused further to live with him; that thereafter, on the 1st day of August, 1891, she undertook to contract a marriage with Jonathan Ladner in Marion county, Miss., now Lamar county, at Purvis; that on the 25th day of October, 1900, said Cunningham instituted proceedings for a divorce

against one Ellen Ladner, formerly Ellen Cunningham, who then passed as the wife of Jonathan Ladner; that said bill of divorce was filed and process issued thereon, and at the January term, 1901, of the chancery court, a decree entered dissolving the bonds of matrimony then existing between Ellen Ladner, formerly Ellen Cunningham, and said E. M. Cunningham. It was further alleged that the three complainants to the said bill were born to the said Ellen Ladner, formerly Ellen Cunningham, and Jonathan Ladner between the time of the illegal and void marriage at Purvis in August, 1891, and January 8, 1901, at which time the divorce was granted, and that said issue are illegitimate and incapable of inheriting from Jonathan Ladner. Defendant prayed for a decree canceling the claims of complainants as a cloud upon the title of the defendant and cross-defendant.

Complainants answered the cross-bill and denied that they were illegitimate children of Jonathan Ladner, but admitted the marriage of their mother to E. M. Cunningham prior to her marriage to Ladner, and that she had lived with Cunningham as his wife for several years. But complainants denied that in 1881 their mother had abandoned Cunningham and refused to live with him, but asserted that Cunningham had deserted his wife, their mother, without just cause, leaving her with two small children, and that she neither saw nor heard from said Cunningham for a period of more than seven years after such separation, and that she was informed by a letter received by the mother of said Cunningham that said Cunningham was dead, and complainants asserted that their mother believed and had good reason to believe that such was a fact, and for more than seven years prior to her marriage to Ladner their mother believed that Cunningham was dead.

Complainants further admit that a divorce may have been obtained by said E. M. Cunningham as alleged in the bill, but allege that same was unnecessary, useless, and in no wise affected the *status* of the parents of the

cross-defendants, as they are advised and believe. Complainants further say that, should they be mistaken in the legal effect of said proceedings and alleged decree of divorce, there was no impediment, obstacle, legal or otherwise to the consummation of a valid marriage between their parents, Jonathan and Ellen Ladner, and that thereafter they lived together as man and wife from and after the ceremony of marriage in 1891 to the death of their mother on the 8th day of November, 1906, and that from and after the rendition of the decree of divorce in January, 1901, there was no impediment or obstacle to a valid marriage between their said parents; that matrimonial consent must be presumed to have been interchanged between the said parents upon the removal of said impediment or obstacle, if any such existed; and that their living together after removal of such impediment was a ratification of the former ceremonial marriage.

Both Ladner and his wife by the second marriage were dead at the time the suit here involved originated. Complainants testified that they had seen a letter which was received by their mother stating that Cunningham was dead, and that she had often told them that he had not been heard from, and that he had left her, and that his whereabouts were unknown.

A number of witnesses testified to the ceremony of marriage between Ladner and Mrs. Cunningham. It further appeared that Mrs. Cunningham came into the community early in the 80's with her father, a Mr. Purvis, and lived with him as a member of his family household until her marriage with Mr. Ladner, some ten years after the separation. The proof showed that Mr. and Mrs. Ladner were recognized as people of good character, and that Cunningham's mother and sister lived in the community, and that no one had heard anything as to his whereabouts until his appearance in 1900, except one witness testified that some time in the 80's he saw Cunningham on a train passing through the county, and that

Cunningham claimed he was going to attend a camp meeting somewhere in the county.

In 1900 Cunningham reappeared and filed a bill for divorce as alleged in the bill. The record does not show process served on Mrs. Ladner other than the recitals of the decree granting the divorce. The divorce proceedings were introduced, and show that Cunningham filed a bill as a resident and citizen of Dallas, Tex. Depositions were taken of some witnesses who testified that Cunningham and Mrs. Ladner lived together as husband and wife in Wayne county and separated in 1881. It does not show how long Cunningham lived in that county or when he went to Texas. Cunningham's deposition was not taken nor was any showing made as to why it was not obtainable.

We think the record contains enough evidence to make manifest that Mrs. Cunningham, who afterwards married Jonathan Ladner, had not heard from Cunningham and did not know his whereabouts from the time of the separation until his reappearance in 1900, a period of almost twenty years. The record does show that the separation between Cunningham and Mrs. Ladner took place in Wayne county, Miss. There is no evidence whatever that divorce proceedings had not been had in Wayne county, Miss., where the separation took place. All the circumstances and facts tend to show that Mrs. Ladner, in good faith, believed Cunningham was dead, and that he had been absent and unheard from either by her or his mother and sister for more than the statutory period prior to her marriage to Ladner.

In *A. & V. Ry. Co.* v. *Beardsley,* 79 Miss. 417, 30 So 660, 89 Am. St. Rep. 660, this court held that a divorce from a former wife still living is presumed upon proof of the second marriage of the husband, and that said second marriage is presumed valid, and that the burden of proof to show that there was no divorce from the first wife was upon the person who denies the validity of the second marriage. This opinion has been reaffirmed in many

cases since its rendition. *Colored Knights of Pythias* v. *Tucker,* 92 Miss. 501, 46 So. 51; *Sullivan* v. *Grand Lodge K. of P.,* 97 Miss. 218, 52 So. 360; *Howard* v. *Kelly,* 111 Miss. 285, 71 So. 391, Ann. Cas. 1918E, 1230; *Allen* v. *McIntosh Lumber Co.,* 117 Miss. 156, 77 So. 909; *Hickman* v. *Hickman,* 126 Miss. 469, 89 So. 6; *Aldridge* v. *Aldridge,* 116 Miss. 385, 77 So. 150; *McAllum* v. *Spinks,* 129 Miss. 237, 91 So. 694.

In *Pittinger* v. *Pittinger,* 28 Colo. 308, 64 P. 195, 89 Am. St. Rep, 193, the supreme court of Colorado held that the law raises a strong presumption where a marriage has been shown of its legality, the strength of which increases with the length of time; that the presumption of the validity of a marriage ceremonially entered into is not overcome by proof of a former marriage of the husband, and the testimony of his former wife that she has taken no steps for a divorce, and that no papers for that purpose had been served upon her; that the law presumes morality and not immorality, marriage and not concubinage.

In *Schaffer* v. *Richardson,* 125 Md. 88, 93 A. 391, L. R. A. 1915E, p. 186, it was held by the Maryland court that a child of a man's first marriage must, to defeat the right of children of a second marriage, duly solemnized and followed by cohabitation for many years, to share in his estate, prove that the first marriage had not been dissolved by death or divorce when the second was contracted. At page 189 of the L. R. A. 1915E (125 Md. 92, 93 A. 392), the court said:

"The tendency of the courts is to hold the second marriage valid, especially if there is issue which may be bastardized by a contrary holding; and, if the marriage has not been questioned for many years, its validity will not be overcome by the mere proof of a prior marriage. In such case the presumption in favor of innocence, morality, and legitimacy will prevail over the presumption of the continuance of the former marriage, and it will be presumed that the first marriage was not binding at the

time of the second. This doctrine is well supported by adjudged cases in many states [citing authorities].

. . .

"Proof of subsequent marriage alone makes out a *prima-facie* case as to its validity. To overcome this *prima-facie* case, proof of a former marriage is required, and also evidence from which it may be concluded that it has not been dissolved by death or divorce. *Re Colton,* 129 Iowa, 542, 105 N. W. 1008; *Patterson* v. *Gaines,* 6 How. [U. S.] 550, 12 L. Ed. 553.

"It is said in *Wenning* v. *Teeple,* 144 Ind. 189, 41 N. E. 600, that 'it is settled law in this state that, when a marriage has been consummated in accordance with the forms of law, it is presumed that no legal impediments existed to the parties entering into such marriage, and the fact, if shown, that either or both of the parties have been previously married, and that such wife or husband of the first marriage is still living, does not destroy the *prima-facie* legality of the last marriage. The presumption in such a case is that the former marriage has been legally dissolved, and the burden that it has not rests upon the party seeking to impeach the last marriage.' "

See, also, *Hunter* v. *Hunter,* 111 Cal. 261, 43 P. 756, 31 L. R. A. 411, 52 Am. St. Rep. 180; *Potter* v. *Clapp,* 203 Ill. 592, 68 N. E. 81, 96 Am. St. Rep. 322; *Maier* v. *Brock,* 222 Mo. 74, 120 S. W. 1167, 133 Am. St. Rep. 513, 17 Ann. Cas. 673; *Hallums* v. *Hallums,* 74 S. C. 407, 54 S. E. 613.

In 18 R. C. L., at page 417, in discussing presumptions against impediments of marriage, it is said: "42. The general presumption is that the life of a person continues for seven years after he is last heard from, and that his death is presumed after the lapse of that time, but, where the presumption of the validity of a marriage, arising from the performance of a ceremony, conflicts with the presumption of the continued life of a former spouse of one of the parties, if neither is aided by proof of facts or circumstances corroborating it, the presumption of the validity of the second marriage will prevail over the

presumption of the continuance of the life of the former spouse although the full seven years has not elapsed. It has been held that, where a wife is deserted by her husband, and he is unheard of for some time, she is under no duty to ascertain his whereabouts before remarrying. It is the duty of the husband to keep her advised of his whereabouts, and she has a right to believe from his silence for the requisite time that he is dead.''

In 18 R. C. L., at page 420, under the heading of ''Force of Presumption and Evidence to Overcome It,'' in the concluding part of section 44, it is said: ''Mere proof of a prior marriage and that one party had not obtained a divorce is not sufficient, for the other might have obtained such divorce and left him or her free to contract the second marriage.''

In *Spears* v. *Burton,* 31 Miss. 547, it is said by this court: ''The declarations of a deceased person that her former husband was dead at the time of her second marriage are competent evidence on the trial of an issue involving the legitimacy of the children of such second marriage.''

It was also announced that, where a person has departed from the state and has not since been heard from, the presumption of the law is that he is alive until the lapse of five years, and after that time that he is dead. But the presumption of life, within the five years, is not sufficient to establish the illegality of a second marriage of such person's wife within that time, for that would be to establish a crime by mere presumption of law; and especially ought the second marriage to be deemed legal, when it is attacked after the lapse of twenty years, and during all that time the party`has not been heard from.

In *Gibson* v. *State,* 38 Miss. 313, it is said that the law presumes in favor of the validity of a marriage contract-ed by a person whose husband or wife by a former marriage has been absent and not heard from, and not known by such party to be living for five years preceding such second marriage, that the absent and unheard of hus-

band or wife is dead; that the legal presumption of the
death of a husband or wife who has been absent without
being heard from for five years and the consequent valid-
ity of a second marriage contracted by the abandoned
party, after the expiration of that period, will be acted
on in a prosecution for bigamy against one of the parties
to such second marriage who subsequently and during the
life of the other has contracted another marriage. At
pages 321, 322 (38 Miss.), in discussing this subject, the
court said:

"The question upon which this position depends is
whether the marriage between the accused and Maria
Williams was in law valid, under the circumstances in
which it was contracted. It appears by the evidence that
her former husband had been absent for more than five
years at the time, and had not been heard of during that
period; that he had been reported to be drowned, and
that the report was believed and acted on in the family
connection, and Williams has not since made his appear-
ance, and is not shown to have been alive since his de-
parture; that, under such circumstances, the marriage
was celebrated in due legal form. In point of civil rights
resulting from the marriage it cannot be doubted that
such a marriage would be valid; the former husband not
having been proved to be alive after it took place. The
right of dower in the wife would have existed, and the
offspring of the marriage would have been legitimate
and the legal heirs of the father's estate. This results
from the presumption of law created by our statute in
relation to bigamy, exempting any person from the pen-
alty of the statute who shall contract another marriage
after the husband or wife shall have been absent for five
successive years, without being known to the person con-
tracting the marriage to be living. . . .

"Where the fact of the celebration of the marriage,
and in due form of law, is fully proved in such cases,
there appears to be no difference as to its validity, be-
tween the civil and criminal consequences which may

proceed from it.  The question in both respects is whether the parties were competent to contract a legal marriage; and, when the presumption of law exists that the former husband is dead, by reason of his absence for five successive years unheard of, the disability of the party is removed by the legal presumption, and she is competent to contract a new marriage, which is legal and valid to all intents and purposes until the presumption of death be removed by proof that the absent husband was alive at the time of its celebration.''

On the record before us we do not think the fact that Cunningham reappeared and filed a suit for divorce would overcome the presumption that Mrs. Ladner prior to her marriage to Ladner had obtained a divorce from Cunningham.  The burden of proof was upon the cross-complainant to prove that fact.  There was no proof that a divorce had not been obtained in Wayne county where the separation took place, nor in the county where the parties lived.  As stated above in the authorities, to prove that one of the parties had not obtained a divorce does not prove that the other has not done so, and, consequently, as announced in the case of *A. & V. Ry. Co.* v. *Beardsley,* 79 Miss. 417, 30 So. 660, 89 Am. St. Rep. 660, *supra,* and other cases cited herein, the presumption exists that the parties were divorced, and, consequently, that the children of the last marriage were legitimate. It has appeared from the announcement of our court that, after the statutory period, by present statute seven years, an absence from the state without being heard from by parties who would likely hear from the person if living, the other party became capacitated to contract a marriage, and, where the marriage was contracted, relying upon the statutory presumption of death, it would seem logically to follow that subsequent developments would not destroy the marriage so contracted, the party having the right to act upon the presumption under the statute and to remarry without a divorce; that when such right was exercised it would have the legal effect

of dissolving the former marriage; and that the subsequent development that the person was actually alive would not have the effect of destroying the marriage so entered into nor to render the issue of such marriage illegitimate. It would be an anomalous situation which would capacitate a party to contract a marriage under such circumstances that would destroy such a contract entered into in good faith in the honest belief that the party was dead. It is difficult to see how a marriage can be valid and children legitimate if, after the marriage, nothing is heard from the party, and be illegitimate if, after the marriage so contracted in good faith on the belief that the person was ·dead, it should develop that he was not in fact dead.

We think that the chancellor was in error in holding the marriage invalid, and the judgment will be reversed and the cause remanded for future proceedings in accordance with these views.

*Reversed and remanded.*