Colored Knights of Pythias *v.* Pinkie Tucker.

[46 South., 51.]

1. Benefit Society. *Validity of second marriage. Divorce. Evidence. Instruction.*

Where the issue in a suit upon a life insurance policy is whether, or not, the plaintiff was the wife of the insured, and it is shown that she was formerly married to another person still living, it is error to instruct the jury that they should presume a divorce from such other person, unless it had been "conclusively" proved that she had not been divorced from him before her marriage to the insured, since such instruction would exclude all circumstances tending to show that no divorce had been granted which were not absolutely conclusive, amounting in effect to a demonstration.

2. Same. *Presumption. Evidence to overcome. Question for jury.*

It is a question for the jury whether or not evidence tending to show that plaintiff had not been divorced from a former husband was sufficient to overcome the presumption of the validity of her marriage to one as whose widow she had brought suit on a life insurance policy.

3. Same.

In a suit on a life insurance policy by one claiming as the widow of the insured, to be the beneficiary in his policy, the fact that she and a former husband still living may not have both resided in the county where they were married continuously thereafter until her marriage to the decedent, she having perhaps been absent for two or three out of the ten years intervening, does not preclude a finding by the jury, from the fact that the records of that county did not show a divorce and from other evidence in the case, that no divorce had been granted dissolving the first marriage.

FROM the circuit court of Madison county

HON. DAVID M. MILLER, Judge.

The appellee, Mrs. Tucker, was plaintiff, and the Colored Knights of Pythias, appellant, was defendant in the court below. From a judgment in plaintiff's favor defendant appealed to the supreme court.

The opinion of the court states the facts,—the instruction considered by the court being in the following words:

"No. 3. The court further instructs that, even though you believe from the evidence that Pinkie Tucker was married to Charley Diamond before she married Jake Tucker you are bound to presume a divorce from said Charley Diamond, unless it is conclusively proved by positive evidence that no divorce had been granted before the second marriage. And on this line the court instructs you that under our statutes divorce proceedings must be instituted and decrees granted in the county in which the defendant resides, if the defendant be a resident of the state, or in the county of the residence of the parties at the time of separation; and unless the defendant herein has conclusively shown that both Pinkie Tucker and Charley Diamond were residents of this county at the time of their separation, and that they both resided in this county until the date of the marriage of Jake and Pinkie Tucker, then they have not shown conclusively that a decree of divorce has not been granted, and until this is shown you are bound to presume a divorce between Diamond and Pinkie Tucker."

*W. J. Latham,* for appellant.

A preponderance of the testimony shows that Pinkie Tucker never lived in any other county than Madison, and the only direct testimony which contradicts that is from herself, and that indefinite as to the time when she absented herself from Madison county.

Unless there was a valid divorce, granted by a court of competent jurisdiction, between her and Charles Diamond, before her

marriage to Tucker, or Diamond was dead before she married Tucker, she is yet the lawful wife of Diamond, and the marriage to Tucker was illegal and she is not the widow and heir of Tucker. It is certain that she obtained no divorce. Diamond obtained no divorce in Madison county, which was the county of their separation and of his residence, and he obtained no divorce in any other county to the knowledge of the appellee, and it is also certain that Diamond is not dead. If Diamond had obtained a divorce in any other county than Madison, where he resided and where the separation took place, such divorce would be illegal, null and void and of no effect to legalize the marriage of Pinkie with Tucker. Code 1892, § 1569, clearly provides and shows in what county complainant must file his bill for divorce. If the complainant is still a resident of the county in which the separation took place, the bill must be filed in the county of his residence. See Code 1892, § 1569, (Code 1906, § 1677.) The evidence shows that Madison county was the county in which the separation occurred, and that Charles Diamond has continued to reside in that county until this day. So that had he filed a bill of divorce, he could not have legally filed it in any other county than Madison county; and a decree dissolving the marriage relations between Diamond and Pinkie, instituted by him in any other court than the chancery court of Madison county would be illegal. No divorce was granted in Madison county. Hence we must conclude that there was no divorce granted between Pinkie Tucker and Charles Diamond. The marriage of Pinkie with Tucker was an illegal marriage, and she is not his widow and heir. The jury finding a verdict in plaintiff's favor, with such evidence before them, reached an incorrect verdict and their verdict should have been set aside by the court.

Counsel for the appellee will insist upon the court adopting the theory that Charles Diamond might possibly have obtained a divorce at Greenville, Washington county, or some other of the seventy-six counties of the state, without the knowledge of

Pinkie and therefore the jury might presume a divorce had been granted. We insist that even could such presumption of divorce be indulged in, a construction of Code 1892, § 1569, would break down such presumption and declare such a divorce illegal and of no effect. "This chasm has no bridge, but conjecture, which is insufficient to maintain a jury in crossing to a verdict in any case." The verdict must have a better foundation. There was only a possibility that a divorce was granted. A new trial should have been granted on the motion. See *Illinois, etc., R. R. Co.* v. *Carthy,* 70 Miss., 332, 12 South., 253; *Harris* v. *State,* 71 Miss., 462, 14 South., 266; *Monroe* v. *State,* 71 Miss., 196, 13 South., 884; *Dodson* v. *State,* 67 Miss., 330, 7 South., 327; *Solomon* v. *Compress,* 69 Miss., 319, 10 South., 446, 12 South. 339; *Myers* v. *Farrell,* 47 Miss., 281.

The three instructions given the plaintiff in the court below are all erroneous and point to the idea of a presumption of divorce. Before the courts will indulge in any presumptions of divorce from a former marriage, that presumption must have some foundation or else it will not be indulged—it will fall. The fact that Charles Diamond might have gone to some other county than the proper one and obtained a divorce from appellee, in the light of the evidence before the jury, will not create any legal presumption that he had a divorce, and to so instruct the jury is a serious error. What reason did Pinkie have to presume that Diamond had gotten a divorce from her? None. Why presume an illegal and impossible thing? See the case of *Ellis* v. *Ellis,* 58 Iowa, 720; *Gillman* v. *Sheets,* 78 Iowa, 499.

*E. B. Harrell,* for appellee.

When it has been shown that marriage has been consummated according to law, it will be presumed that no legal impediment existed to prevent the parties from entering into matrimonial relations; and the fact, if shown, that either or both of the par-

ties have been previously married, and at a former time had a wife or husband living, does not destroy the *prima facie* legality of the last marriage. The inference is that the former marriage has been legally dissolved, and the burden of showing that it has not rests upon the party seeking to impeach the last marriage. *Harris* v. *Harris,* 8 Ill. App., 57; *Pittinger* v. *Pittinger,* 28 Col., 308, 309, 310, 311.

Appellant has failed to make this proof and contents himself with the disclosure of the records of Madison county. The evidence herein shows that Pinkie Tucker lived separate and apart from her first husband for about ten years and during that period she resided in Washington county, for about three years, and remainder of the time in Madison county. Now we contend that if she had the right to presume a divorce in Madison county, she had the same right to presume a divorce in Washington county. Why is it that appellant did not have a certificate from the clerk of the chancery court of Washington county disclosing his records? Why didn't it question the plaintiff (she testified at its request) to see if she had ever been served with any kind of process for divorce? She stated that she had been informed and believed that her first husband had been granted a divorce, and that he married eight years before she did.

This certainly is enough to raise the presumption of the dissolution of the first marriage.

Appellant contends that if the first husband had filed a bill for divorce in any other court than Madison the proceedings would have been void.

Upon examination of the Code 1892, § 1569, we find this language: "If the defendant be a resident of this state the bill shall be filed in the county in which the defendant resides or may be found at the time." On several pages of this record we find testimony to the effect that appellee was a resident and could have been found in Washington county, Mississippi.

Surely that county had jurisdiction! This very fact is the foundation of our verdict for the jury presumed a divorce in that county.

Argued orally by *W. J. Latham,* for appellant and *E. B. Harrell,* for appellee.

Mayes, J., delivered the opinion of the court.

The record shows that Pinkie Townes married Charley Diamond in Madison county on the 18th day of October 1894, and that Charley Diamond is still living in the county where this marriage was celebrated. It also shows that about ten years afterwards—that is to say, on the 24th day of December, 1904 —Pinkie Townes, then going under the name of Pinkie Diamond, married Jake Tucker, and this second marriage also took place in Madison county. It is undisputed that Pinkie Diamond, who married Jake Tucker in 1904, and Pinkie Townes, who married Charley Diamond in 1894, is one and the same person. Jake Tucker procured a policy of insurance in the Colored Knights of Pythias for the sum of $400, and, having died, Pinkie Tucker brings this suit to recover the amount of the insurance, claiming that she was his lawful wife at the date of his death. The Knights of Pythias deny liability to her on the policy, because they say she was not the wife of Jake Tucker at the time of his death; that she was, at the time she married Jake Tucker, married to Charley Diamond; that she had never been divorced from Charley Diamond. The record shows that Pinkie Tucker only lived with her first husband, Charley Diamond, a short while after their marriage and left him—some of the witnesses testifying that after she left Charley Diamond she continuously lived and stayed in Madison county up to the time she contracted the second marriage; others testifying that she left Madison county and went to Greenville, Miss., for two or three years, returning then to Madison county, and continuing to live there up to the time of suit. It is conclusivley shown that no divorce was ever granted in Madison county, and Pinkie

Tucker, plaintiff in this case, testifies that she never instituted suit for a divorce from Diamond in any county; but Diamond said he had obtained a divorce, but she did not know whether he got the divorce or not. At all events, it is apparent from the record that she never filed a divorce suit herself, nor was she served with summons of any divorce suit instituted by her first husband, Charley Diamond, either at Greenville or in Madison county. From 1894 to 1904, it is shown that the only two places where she resided was in Washington county for perhaps three years, and the balance of the time in Madison county, and Charley Diamond, her first husband, lived in Madison county from the time of the marriage to date of suit.

On this state of facts the court gave the following instruction, viz.: "The court further instructs the jury that, even though you believe from the evidence that Pinkie Tucker was married to Charley Diamond before she married Jake Tucker, you are bound to presume a divorce from Charley Diamond, unless it is conclusively proved by positive evidence that no divorce had been granted before the second marriage." This instruction does not announce the law correctly. By it a higher degree of proof is required than is ever required in a criminal case. It is universal law that the presumption in favor of the validity of a formal marriage is one of the strongest known to the law, because of its sacredness and public importance; but after all it is but a presumption of law, not conclusive, and therefore capable of being overcome by such testimony as satisfies the mind of the jury that there is no valid marriage. With the strong presumption raised by the law in favor of the validity of marriage, an alleged marriage is not to be declared invalid except upon the clearest and strongest proof; but, when competent evidence has been submitted going to disprove marriage, the weight and sufficiency of that evidence is a matter for the jury, subject to the power of the court to set aside the verdict in any case when their conclusion is not warranted by the facts. Demonstration is never required, and when the jury are told that they

are bound to presume a divorce from the first husband before the second marriage was contracted, "unless it is conclusively proved by positive testimony that no divorce had been granted before the second marriage," the instruction in effect requires demonstration, and excludes from evidence all circumstances tending to show that no divorce had been granted. The case of *Railway Co.* v. *Beardsley,* 79 Miss., 417, 30 South., 660, is a leading case on this subject; but all that is held in that case is simply that when a marriage is duly proved it will be presumed to be valid, although it may be shown that there is a former wife or husband living, unless the party assailing the second marriage prove the negative fact that no divorce had ever been granted from the first wife or husband. By this case, referred to above, no degree of proof is attempted to be established which will warrant the conclusion that there was no divorce. It merely establishes on whom lies the burden of showing that there was no divorce from the prior marriage. No case that we have found in the books anywhere goes to the extreme of holding that, in order to rebut the presumption raised in favor of the validity of a marriage, the party assailing it must offer conclusive evidence in order to rebut the presumption. If this were the law, it would in effect place the presumption beyond the realm of controversy, since there are not many instances where the proof can arise to that degree of certainty where it may be said to be conclusive. If the proof was sufficient under all the circumstances of the case to produce conviction in an unprejudiced mind that no divorce had been granted, then it was as high a degree of proof as the law required.

In the case of *Schmisseur* v. *Beatrie,* 147 Ill., 210, 35 N. E., 525, it is held that a person attacking a marriage on the ground that a former spouse of one of the parties is living must show that the first marriage has not been dissolved. Still, he is not required to make plenary proof of such negative averment. In the case of *Pittinger* v. *Pittinger,* 28 Colo., 308, 64 Pac., 195, 89 Am. St. Rep., 206, it is stated that: "The presumption of the

dissolution of a prior marriage, whether by death or divorce, should be indulged with caution. We apprehend that such presumptions sometimes have been made with very little justification. A rule of law which allows an artificial or technical force to be given evidence, which warrants such presumptions, beyond its natural tendency to convince the mind, and requires courts and juries to presume as true that which probably is false, cannot but be fraught with dangerous consequences. In case there is a conflict of presumptions, it would appear more reasonable that the one should yield which has the lesser probability to sustain it, rather than that the one in favor of innocence and of the validity of the subsequent marriage should prevail"—citing *Clayton* v. *Wardell,* 4 N. Y., 230; *O'Gara* v. *Eisenlohr,* 38 N. Y., 296; *Northfield* v. *Plymouth,* 20 Vt. 582–590. In the case of *Williams* v. *Williams,* 63 Wis., 58, 23 N. W., 110, 53 Am. Rep., 253, 257, it is said: "There is no rigid presumption against the continuance of the life of one of the parties to a prior marriage in order to establish the innocence of the other party to a subsequent marriage; much less is there any rigid presumption of the dissolution of the first marriage by a divorce prior to the second in order to establish such innocence. Probably there are cases in which the facts and circumstances were such as to justify the inference that the former marriage had been dissolved by a divorce; but the rule indicated authorized no absolute presumption of law to that effect. Each case must be determined upon its own facts and circumstances, and such inferences as should fairly be drawn from them."

Any competent evidence which in the judgment of the jury is sufficient to overcome the very strong presumption which the law raises in favor of the validity of the marriage is sufficient to prove that no divorce had been granted. In this case the territory in which these parties have lived was very much circumscribed. In the nature of things, and on the testimony in this record, considering the fact that the record shows that the plaintiff and her former husband had only lived in two

counties in this state throughout this entire period of time, it was impossible that a divorce could have been granted in any except one of these two places. It is undisputably shown that no divorce was obtained by either party in Madison county, and it is also shown that she had not obtained one in Greenville, and that no summons had been served on her while there of any suit instituted by her husband. If a divorce had been obtained by the husband, it is extremely improbable that it could have been done without the knowledge of the wife under the circumstances shown by this record. The first husband is still alive, and in the county where this suit was instituted. This is all shown by the record. We do not say whether the evidence offered by the appellant showing the former marriage of Pinkie Tucker with Charley Diamond, the fact that Charley Diamond is still alive and was alive at the date of the second marriage, the fact that he has always resided in Madison county and that the records show that no divorce has been granted there, the fact that while Pinkie Tucker resided in Greenville she instituted no suit against Charley Diamond for divorce either there or elsewhere and that she was not notified of any suit having been instituted against her, are sufficient to overcome the presumption of the validity of the second marriage or not; but we do say that these were all matters for the consideration of the jury, without being told, as they were, that, if this evidence did not conclusively show that no divorce had been granted, they were bound to find in favor of the validity of the second marriage. It was not necessary for the evidence to be conclusive.

Instruction No. 3, given for plaintiff, is subject to still further criticism; but we do not deem it necessary to further discuss it, since the main objection to it is the same as that already pointed out in this opinion. The fact that Pinkie Tucker and Charley Diamond did not both continue to live in Madison county from the date that they were married until the time when Pinkie Tucker married Jake Tucker does not preclude the jury from reaching the conclusion, on the other testi-

mony in the case, that no divorce had ever been granted dissolving the first marriage, and the part of the instruction which announces this is error. We direct that in the report of the case this instruction be set out in full.

*Reversed and remanded.*