McALLUM ET AL. r. SPINKS ET AL.

[91 South.  694.  Nos. 22272, 22273.]

1. PROCESS. *Writ without seal of the court or a statement of the fact if court has no seal is bad on appeal by defendant served therewith.*

On direct appeal a writ without the seal of the court, or a statement of the fact, if there were no seal, is bad.

2. DIVORCE. *Where original subpoena issued does not show seal, it will be presumed in a collateral attack upon the decree after thirty years that the court caused a proper subpoena to be executed.*

In a collateral attack upon a decree of divorce after the lapse of over thirty years, where the original subpoena issued for the defendant does not show a seal of the court, it will be presumed that the court before granting the decree ordered a proper subpoena issued which was properly executed upon the defendant.

3. PROCESS. *Return of sheriff on subpoena for defendant held not subject to collateral attack.*

Where the return of the sheriff upon a subpoena for a defendant in a divorce suit reads as follows: "Executed by personal service and copy"—this is a substantial compliance with section 1527, Code 1880. At best, it was a mere irregularity, could have been amended if necessary in that suit, and cannot be attacked in a collateral proceeding.

4. MARRIAGE. *Marriage duly proved presumed valid, though former husband of woman is still living.*

A marriage duly proved will be presumed valid, although a former husband of the woman may be still living, and the burden of proof is upon the party asserting the invalidity of the marriage to prove that there has been no divorce of the former marriage.

5. MARRIAGE. *How the fact of marriage may be proved.*

The fact of marriage may be established by evidence of the acts and declarations of the parties, by proof of the general repute in the family, and by proof of the declarations of deceased persons, who were related to them by blood or marriage.

APPEAL from chancery court of Humphreys county.
HON. E. N. THOMAS, Chancellor.

Suits by Willis McAllum and by Pearl McAllum and others against L. P. Spinks and others. The suits were consolidated. Decree dismissing both bills, and the complainants appeal. Affirmed.

*Campbell & Campbell,* for appellant.

Let us see what is the effect of the formal and ceremonial marriage entered into by and between William McAllum and Pearl McAllum. If either of the contracting parties are shown by the evidence to have previously married, the parties to the previous marriage will be presumed to have secured a divorce, or to have been dead at the time of the formal and ceremonial marriage. This is unquestionably the law as announced by our supreme court in the following decisions. *Wilkie* v. *Collins,* 48 Miss. 496; *Railway Co.* v. *Beardsley,* 79 Miss. 417; *Sullivan* v. *Grand Lodge,* 97 Miss. 218, *Howard* v. *Kelly,* 111 Miss. 285.

These cases are all Mississippi cases establishing the doctrine that where formal ceremonial marriage is shown the presumption is, that any previous marriage has been dissolved either by divorce or death.

The divorce proceedings in Kemper county of *William McAllum* v. *Sue McAllum* was not evidence of their marriage. See *Williams* v. *Williams,* 53 Amer. Rep. 262, *et seq.* The admissions of the parties of a marriage are admissible only as part of the *res gestae* and are only admissible, if the parties are cohabiting together as man and wife. See Rulin Case Law, vol. 18, sections 51 and 424; Note 22 Amer. Dec., pp. 161, 162; *Myatt* v. *Myatt,* 44 Ill. 472; *Gaines* v. *Relf,* 12 How. (U. S.) 472.

William McAllum entered into a formal and ceremonial marriage with Pearl McAllum on the 22nd day of August, 1919, as shown by marriage license and certificate in record, and when the impediment to their marriage was removed, and if they continued to live together as man and wife, the marriage was valid from the very minute the impediment was removed. See R. C. L., vol. 18, section 64, page 436. In the recent and last case of *Sims* v. *Sims,* 85 So. 73 our supreme court followed the text of R. C. L. *supra* and Judge SMITH on page 75 quotes from Bishop on Marriage, Divorce and Separation.

But, as appellant proved a ceremonial marriage between Pearl McAllum and Robert McAllum it was incumbent upon appellees and the burden of proof was upon them to show either that there had been no divorce between Pearl Howard and Robert Howard, or to prove that Robert Howard was living, before they could overcome the ceremonial marriage to William McAllum. 19 Amer. & Eng. Enc. of Law (2 Ed.) page 1206.

The text of Amer. & Eng. Enc. of Law cited *supra* is amply and fully sustained by a very able opinion of the court of last resort of Maryland. The case is that of *Jones* v. *Jones* reported in 30 American Reports, page 466 and discusses the question very ably and fully and we earnestly request this court to read the same. See also the case of *Williams* v. *Williams,* 53 Amer. Rep., page 253.

The marriage of Pearl McAllum to Robert Howard will be presumed by law under the Mississippi authorities, *Wilkie* v. *Collins*, 48 Miss. 496; *Railway* v. *Beardsley*, 79 Miss. 417 and *Sullivan* v. *Grand Lodge*, 97 Miss. 360, cited *supra*, to have been dissolved either by divorce or the death of Robert Howard.

Process, Form, Requisites, and Sufficiency of Return, Manner of Service. "The return should show clearly and fully the manner in which service was made, so that it may appear of record whether the statutory requirements as to the manner have been substantially complied with. 32 Cyc., page 503.

"Executed by personal service on the 20th day of March 1866 is an insufficient return. *Davis* v. *Paty*, 42 Miss. 810; *Dogan* v. *Barnes*, 76 Miss. 566.

Constructive Service of Summons—Judgment at Return Term. Under Code 1871 and under Code 1880 a judgment rendered on constructive service at the return term is void. *Moore* v. *Hoskins*, 66 Miss. 496.

The appellees then introduced the original summons, which showed the sheriff's return to be executed by personal service and copy. We do not think that this helped matters any as it did not show that a copy was handed to the defendant Neela McAllum.

The decree in the divorce suit of *William McAllum* v. *Neela McAllum* will be found in the record at page 253 does not recite that Neela was summoned by handing her a true copy nor does it recite any proof taken. The case of *Barton* v. *Cramer*, 86 So. 578 and also reported in 123 Miss. 848, decides that a judgment rendered on a writ without the seal of the court is utterly void and that the court has no jurisdiction of the person of the defendant.

The decree of the divorce of William McAllum and Neela McAllum being utterly void, and not merely voidable can be attacked collaterally. This decree being utterly void Neela, who is still living and whose depositions will be found in the record in vol. 2, p. 299, was the legal wife of William McAllum at the time of his death, and inherited all of his property. This woman Neela conveyed her in-

terest to Campbell & Campbell which deed will be found at
page — of the record, and Campbell & Campbell, who are
merely conduits of title conveyed the land to Pearl Mc-
Allum and for this reason Pearl McAllum is entitled to
all the property of which William McAllum died seized and
possessed.   Pearl McAllum has deeded a one-sixth interest
to Florence and Jab McAllum, therefore complainants are
entitled to the relief prayed for in their original bill and
the chancellor erred in dismissing the original bill.

*Wells, Stevens & Jones,* for appellants.

The chancellor erred in dismissing the bill of Pearl Mc-
Allum, wife No. five first, because the evidence in the case
utterly fails to overthrow the presumption that she is the
legal wife of William McAllum, deceased, she having proven
that she was married to him in due form and ceremony on a
license duly issued for that purpose, and returned duly
executed.

The record in this case vol. 2, pages 7 to 95, inclusive
contains undisputed testimony of a ceremonial marriage
between William McAllum, deceased, and the appellant
Pearl McAllum.   In addition to that, at page 190, of the
same volume of the record is a certified copy of a marriage
license issued to these parties with a due and legal return
thereon by the minister performing the ceremony of mar-
riage between them.

Under this proof, therefore, every presumption will be
indulged by law in favor of the validity of the marriage,
and this presumption by law overcomes the presumption
that any prior spouse of either party is living, or that
either party had not been divorced from any prior spouse.
See *Spears* v. *Burton,* 31 Miss. 555; *Hull* v. *Rawls,* 27 Miss.
471; *Wilkie* v. *Collins,* 48 Miss. 496; *Railway Company* v.
*Beardsley,* 79 Miss. 417, 30 So. 660, 89 Am. St. Rep. 660;
*Sullivan* v. *Grand Lodge,* 97 Miss. 218, 52 So. 360; *Bennett*
v. *State,* 56 So. 780; *Howard* v. *Kelly,* 111 Miss. 285, 71 So.
391; *Allan* v. *McIntosh Lbr. Co.,* 117 Miss. 156, 77 So. 909.

Therefore when the appellees in this case allege that the appellant Pearl McAllum, was not the legal wife of William McAllum, deceased, they have upon them, imposed by law, the burden of proof that one of these contracting parties, William or Pearl, was incapacitated to enter into a legal contract of marriage.

With reference to William McAllum's incapacity to marry, they undertook to prove that he was not divorced from his supposed second wife, Sue, but it is to be remembered that they did not at any time prove the marriage of Sue to William McAllum, and the divorce proceedings between these parties in the chancery court of Kemper county was in no wise competent evidence of a marriage between them. See *Allen* v. *McIntosh Lbr. Co.*, 117 Miss. 156, 77 So. 909. In the opinion of the court on this case we find this sentence, on page 172. "How a bill for divorce could even tend to prove the issue in this case we are unable to say." See also authorities cited in the brief of Messrs. Campbell & Campbell, for the appellant Pearl McAllum.

But conceding for the sake of the argument that a legal marriage was proven between William McAllum and Sue the record speaks beyond all contradiction the fact that William and Sue were divorced in December 1919; that William thought he had been divorced in July 1919, before his marriage to Pearl McAllum.

The evidence is full and uncontradicted here that the relations of William McAllum and Pearl McAllum in the beginning were not meretricious. William believed that he had obtained all the divorce necessary to leave him a free man, and therefore this case comes squarely within the decision of this court in *Simms* v. *Simms*, 85 So. Rep. 73. See also R. C. L. volume 18, section 64, page 436.

The appellees, realizing that they had failed to meet the burden imposed upon them, then undertook to prove that the appellant, Pearl McAllum, was formerly Pearl Blockett and to prove that she was legally incapacitated to marry because of two alleged former marriages.

Pearl McAllum admitted that she had been married near Flora, Miss., in Madison county, somewhere about the

year 1913, to one Lee Blockett, and that she moved to the delta with him shortly thereafter and lived near Anguilla. That shortly after arriving there Lee Blockett deserted her, and that thereafter she never saw him again, nor heard from him. She further testified, and the testimony is supported by the evidence of Ella Jackson, at page 240 of the record, vol. 2, that she had been advised that he was dead, the information being conveyed to Pearl's mother by her aunt, Ella Jackson, and by the mother to Pearl, and that evidence, we submit stands utterly uncontradicted.

It is true that seven years had not elapsed from the date of his desertion and disappearance to the date of her marriage to William McAllum, but the presumption of marriage is stronger than the presumption of life. This court has so held where one spouse married under such circumstances as related in this record, and as are now being discussed here, and the marriage was held legal. On this point the case of *Howard* v. *Kelly*, 111 Miss. 285, 71 So. 391, the latest announcement of the court on this subject.

The next attempt of the appellees to prove the legal incapacity of Pearl McAllum to marry was that she had been married in Sunflower county in the year 1913 to one, Robert Howard. Their contention on this phase of the case hangs on two slim threads, one a marriage license issued from the circuit clerk of Sunflower county to Robert Howard and Pearl Williams, on October 15, 1913, shown at page 252 of vol. 2 of the record. The court will observe that there is no return on the marriage license showing the performance of any ceremony thereunder. Therefore we submit that the license was utterly incompetent evidence, and for that matter would have been incompetent evidence in this case even though it had been returned, because there is no proof here that the woman Pearl Williams, named in the license was the same person as the woman Pearl Blockett. Under the circumstances this purported evidence comes squarely within, and is condemned by the decision of this court in *Allen* v. *McIntosh Lumber Company, supra.*

To resume with reference to the alleged marriage to Robert Howard, the evidence utterly fails to show, first, that she was ever married to him, second, that he is not dead, or was not dead at the time of her marriage to William McAllum, third, that the woman Pearl Williams who is supposed to have married, was the identical Pearl Williams who married Lee Blockett, and afterwards married William McAllum.

We therefore submit, as to this phase of the case that the record established beyond all doubt that Pearl McAllum was the legal wife of William McAllum.

It is the contention of the appellant that the decree granted William McAllum in that case is utterly and patently void for the following reasons: First, the summons issued in the case did not bear the seal of the chancery court of Kemper county, and neither did it negative the fact that there was no seal of the chancery clerk in his possession. Neither was any seal affixed to the oath to the bill of complaint for the divorce, and the court had no jurisdiction. Second, because the return of the summons was void and would not support a default judgment.

With reference to the first phase of the contention made above, the case comes squarely within the case of *Burton* v. *Cramer,* 86 So. 578, in which the court held that a default judgment could not be supported on a summons, which did not have the seal of the court thereon, or did not negative the fact of the non-existence of the seal. 3 S. & M. 87.

This case should be reversed and a full accounting had between Spinks, administrator, and the grantee of William McAllum's sole heir.

In the second place the return on the summons issued in the case of *William McAllum* v. *Necla McAllum* was void and would not support a default judgment, the return is in the following language: "Executed by personal service, and copy."

This return is governed by the Code of 1880, section 1527, which provides that original process shall be served in one of the following modes. First, upon the defendant personally, if he be found in the county, by handing him a

true copy of the process, and it is with this provision of the section that we are concerned. It will not be contended that the above service was good under either of the other two modes of service authorized by said section 1527.

Comparing the provision of the section just quoted with the return as made by the sheriff it becomes evident that the return is defective because it does not recite that the copy was handed to the defendant Neela McAllum, neither does it recite that the copy left with someone was a true copy, neither does it recite that the service was upon the defendant, nor does it recite that the copy was given to the defendant and not to some member of her household. *Faison* v. *Wolf*, 63 Miss. 24; *Semmes* v. *Patterson, Henry & Company*, 65 Miss. 6; *Dogan* v. *Barnes*, 76 Miss. 566; *Rankin* v. *Dulaney*, 43 Miss. 197; *Faison* v. *Wolf*, 63 Miss. 24.

Unquestionably therefore the return was so defective as not even to support a default judgment, and the defendant, Neela McAllum, not having entered her appearance in the case was not before the court, and the whole proceeding, including the final decree granting to William McAllum a divorce, at the return term was absolutely void.

We submit, therefore, that William McAllum never having been divorced from Neela McAllum that she was the sole heir at law, and entitled to his property, and having conveyed her interest by *mesne* conveyance to the appellant Pearl McAllum, that the appellant is entitled to a judgment for the property in this court.

*Albert Y. Woodward*, for appellee.

The record in this case clearly shows from the deposition of Pearl herself, that she started out as a young woman, devoid of any morals or conscience, for in her deposition she swears that before she left the hills, and while her name was Pearl Williams, she had a bastard child, a little girl by a man of her own race named Williams; while the names were the same they were not related. This was not a seduction case, but simply a plain case of adultery

and unlawful cohabitation, because she states in her deposition that Williams got this child by her without any promise of marriage on his part at all. After this she married Lee Blockett, and according to her deposition she lived with him about three years, and had been separated from him about six or seven years, when her deposition was taken at Yazoo City in this cause. The record amply shows that Lee Blockett and Pearl Blockett were never divorced, and it further shows that they lived at Anguilla and that there was but one Lee Blockett that ever lived in or around Anguilla, Mississippi.

On the other hand this record is pregnant with competent testimony showing that prior to this bigamous marriage between William and Pearl, William had a living, undivorced wife, in Kemper county, Mississippi, to-wit, Sue McAllum, and that William McAllum knew that Sue McAllum was living at that time and he further knew that he had never obtained a divorce from her or she from him.

The court will take judicial notice of the fact that in 1919, the chancery court of Kemper county, Mississippi, was scheduled to convene on the third Monday of July. In August, following the time the Kemper county court was scheduled to be held in July, William married Pearl Blockett, a woman who had lived in his house since 1917. William could not in the very nature of things have contracted this marriage with Pearl, under all of these facts, in good faith, believing that there was no impediment to such a marriage. There was an impediment to William's marriage with Pearl, and that impediment was his former legal marriage with Sue McAllum, who was then living and undivorced.

So we insist most earnestly that there was a double impediment to this bigamous marriage between Pearl McAllum and William McAllum. Pearl having a living undivorced husband and William having a living undivorced wife, and we further insist most respectfully, that neither Pearl nor William, under the proof in this record could have entered into such marriage in good faith.

It is conceded and admitted by both the appellants and the appellees that Neela Nelson and William were lawfully married in Kemper county, Mississippi, and that she was the first wife of William McAllum. We contend that on the 19th day of November, 1889, William McAllum obtained a legal divorce from Neela McAllum in the chancery court of Kemper county, Mississippi. This divorce decree is attacked by the appellants and it is claimed by them to be null and void. We submit that this issue was not raised by the pleadings, but was raised for the first time by the argument of counsel. We further submit and earnestly contend that this is a collateral attack, and has no place in the trial of this cause.

A divorce decree cannot be collaterally attacked. Such an attack as Pearl McAllum makes on this decree is purely collateral and the court will disregard it. This was held by the supreme court of Mississippi in the case of *Hester* v. *Hester*, 103 Miss. 13.

We earnestly insist that every presumption the law might have indulged as to the validity of marriage between William McAllum and Pearl McAllum, has been overwhelmingly rebutted and said marriage is shown to be null and void and bigamous.

The authorities that counsel have cited for appellant are not at all in point, and a casual observation of the same by the court will convince it of the correctness of this statement. The appellees have met every burden imposed upon them by law, and have shown total incapacity of both William and Pearl to enter into a legal contract of marriage.

Counsel for the appellants in their brief contend that the rule laid down in *Simms* v. *Simms,* 85 So. 73, upholds the marriage between Pearl Blockett and William McAllum. There is no similarity between that case and the instant case, and surely there is nothing in the Simms case that could bolster up appellants side of this case.

We contend that the Simms case is good authority for us, and cite it with a great deal of confidence. We contend that in this marriage between William and Pearl

there was no good faith on the part of either of the contracting parties, and that there was an impediment in the way of the marriage, both on Pearl's side and William's side, and the chancellor so held in deciding this case in the court below. It is distinctly held in the Simms case, that good faith on the part of the contracting parties is an essential element to a valid common-law marriage.

We insist most respectively that the only point in the Pearl McAllum case that will determine the issue therein is; Was Pearl McAllum legally married to William McAllum? If she was, she should and will win this suit, but if she was not, she must fail. We submit that there is no evidence in this record to show a lawful marriage between Pearl Blockett and William McAllum. The marriage was a bigamous one, and the very best that can be made out of this relation which existed between Pearl and William is one of unlawful co-habitation, and violative of the statutory and moral laws of the land. They were simply living in adultery, and had been evidently so living ever since Pearl came to William's house from Midnight in 1917 to pick cotton.

In this case we have cited no authorities because the proposition involved is too plain and too well settled to need any. It is simply a question of fact. We claim that Spinks has acted at all times under the written contract he had with Willis. Willis says he is satisfied, no fraud has been proven, the administrator stands ready and willing to account for every dollar that has come into his hands and to pay Willis McAllum, the only heir of William McAllum, every cent that belongs to him in this estate. Mr. Rosenbaum stands ready to deed him the half interest in the property when Willis pays him the one thousand six hundred and twenty-five dollars plus interest and costs. We again ask the question, if Willis is satisfied, who has a right to complain.

The chancellor found that there was no equity in Willis' bill and that there was no evidence to support any of the allegations of said bill, and that there was no evidence in

this record to satisfy the court that the defendant Spinks was guilty of either negligence or lack of attention in representing the said Willis McAllum, and that there was very little conflict between the evidence of Willis McAllum and the defendant L. P. Spinks. Therefore he dismissed the bill at appellants' cost, and we think in this case that the finding of fact by the chancellor is entitled to much weight and should not be overlooked by this honorable court.

In view of all of the facts in the two foregoing cases and the law applicable thereto, and the findings of the chancellor thereon, we respectfully submit that neither Pearl McAllum nor Willis McAllum should prevail in their respective cases.

With the greatest confidence that both of the foregoing cases will be affirmed by this honorable court, I most respectfully submit this brief.

*L. P. Spinks,* for appellee.

Counsel are relying entirely too strongly, we think on that doctrine they claim to be an established one, that when a formal ceremonial marriage is shown, as they allege was shown in this case, to have been performed, every presumption of the law arises to uphold its validity, and no evidence is sufficient to overturn or overthrow this presumption unless same rises to the height of demonstrative evidence. We agree with counsel in part, but we can't go all the way with them. Judge MAYES in the celebrated case of *Colored Knights of Pythias* v. *Tucker,* 92 Miss. 501, gives a very happy and lucid interpretation of what presumptions attach in this state, and their extent. Also in that case he very clearly points out the real holding of the court in the case of *Railway Co.* v. *Beardsley,* 79 Miss. 417, which counsel for appellant cite with so much show of confidence, I am going to ask the court to read again that case of *Colored K. of P's.* v. *Tucker,* 92 Miss. 501.

The case of *Wilkie* v. *Collins,* 48 Miss. 496, cited by the appellants, is authority only for the proposition the presumption of the continuance of life will yield to the presumption of a validity of a marriage. That case also, in order to uphold the rights of the appellant therein finds that the third and last marriage of the intestate was illegal.

I call the court's further attention to the record of divorce proceedings between the intestate and Sue McAllum in Kemper county. Counsel argue that these proceedings are not competent evidence of a marriage between intestate and Sue, and cite authorities from other jurisdictions to uphold their contention. They overlook, however, the case of *Henderson* v. *Cargill,* 31 Miss. 367.

I submit that the doctrine laid down in the above case is sound doctrine, founded on reason, and that its logic cannot be gainsaid.

The case of *Simms* v. *Simms,* 85 So. 75, handed down in 1920, is the authority on which the appellants rely to sustain their contention. That case speaks for itself. Three members there declaring the marriage in that case valid, and three members declaring it invalid. The difference between the members of the court arose in the construction of the laws relating to marriage, three holding, in effect, that our laws did not recognize any marriage contracted since the enactment of the present statute except upon license duly issued, and three members holding that the statute did not prohibit parties contracting common-law marriages within the bounds laid down by them. However that case may be, and whichever decision in that case one may accept, either the opinion as written by Chief Justice SMITH, or the opinion written by Justice ETHRIDGE, I respectfully submit that the appellants do not come within the saving of that case.

Therefore I submit that the doctrine laid down by Mr. Bishop is not the law in the State of Mississippi, was not accepted as the law by Judges SMITH, COOK and STEPHENS; and submit further that the doctrine laid down by Mr. BISHOP is a very dangerous doctrine.

My next contention in this case is that the appellant Pearl McAllum, as of the date that she married the intestate, and as of the date of the intestate's death, had a living, undivorced husband; that she knew that she had a living undivorced husband. Counsel for appellant are very ingenious in their construction and interpretation of the record in this case on this point, and virtually ask that the testimony of the appellant herself, the averments of her bill, and the admissions made by her, all be disregarded; that she be found to have perjured herself or given perjured testimony; and that her rights be measured wholly by those isolated parts of the record where she is given an apparent clean bill of health.

To my mind, as I read the record, there is absolutely no question but what this woman, Pearl McAllum, was married at the time of her alleged marriage to the intestate to one Lee Blockett, and that this marriage was a present subsisting marriage at the time of the intestate's death, and subsisting up until and at the time of the taking of testimony in vacation on the 28th day of February, 1921. There is absolutely no question about this marriage.

But counsel for appellant very ingeniously argue that this marriage proven so abundantly will be presumed by the law to have been void because of an alleged marriage to one Robt. Howard. I submit that the record does not bear them out in this contention. I submit further that such is not the law of the land; that such was rejected in the case of *Wilkie* v. *Collins*, 48 Miss. 496.

In conclusion I want to say that after a careful examination of the record in this case I don't think that it can be said that the trial court had nothing on which to base his finding of fact. After all is said the final determination of the litigation turns on a question of fact. The trial court had the witnesses before it; saw and understood them; heard the argument of both sides, and the record shows that he gave the matter very mature deliberation, and after this deliberation, on the record, made the finding he did.

I respectfully submit that the decree appealed from should be affirmed.

Sykes, P. J., delivered the opinion of the court.

William McAllum, a resident of Humphreys county, died intestate there, leaving at the time of his death 80 acres of land, certain personal property, and some money in bank. At the time of his death he left surviving him a son by the name of Willis McAllum, a resident of Kemper county. Shortly prior to his death William McAllum had contracted a ceremonial marriage in Humphreys county with a woman by the name of Pearl, who was living with him at the time of his death. By another woman he also left two minor children. Shortly after the death of William a man by the name of Lumbley, who held a deed of trust upon William's land, went to Kemper county and purchased Willis' interest in this land for four hundred dollars. Willis, becoming dissatisfied with his sale, thereupon made a contract with Mr. Spinks, an attorney, employing him to attempt to get the land back and attend to a proper administration of the estate of his father, and empowering Mr. Spinks to fully represent him as his agent and attorney in fact in the matter. For which services he deeded to Mr. Spinks a one-half interest in the estate. Willis advised Mr. Spinks as far as he knew about his father's estate, and agreed to go with him to Humphreys county to make an investigation. When the time came to go, however, Willis would not go, and Spinks went alone. He had a conference with Mr. Lumbley in Jackson about compromising with him. At this time it was the contention of Willis and Spinks that Lumbley had misrepresented the amount of his debt, the value of the land, and the money on hand at the time of William's death. In other words, that Lumbley by fraud, misrepresentation, and deceit had obtained a deed from Willis McAllum to his father's estate for a grossly inadequate consideration. Shortly after Spinks returned to Kemper county Lumbley wrote him a letter, in which he agreed to quitclaim all of

this property, consisting of the estate of William McAllum to Willis McAllum and Spinks for a consideration of three thousand, two hundred and fifty dollars. This offer of settlement was discussed between Spinks and Willis Mc-Allum and Mr. Rosenbaum, a merchant of that county, was called in to the conference. The uncontradicted testimony shows that the matter was fully discussed among these three parties, and it was finally agreed upon among them that it would be better to accept the Lumbley offer than to litigate the matter. Mr. Spinks paid his one-half of the money in cash. Mr. Rosenbaum loaned the other half to Willis McAllum, with the agreement, subsequently reduced to writing, that when Willis should repay this amount with interest to Rosenbaum, Rosenbaum would then deed him the half interest he had acquired in this estate. Thereupon Lumbley by quitclaim deeded all of the property to Spinks and Rosenbaum. He also assigned to them the note and deed of trust held by him. Spinks qualified as administrator of the estate in Humphreys county. Thereafter Spinks and Rosenbaum had the trustee in the deed of trust to sell the land, at which sale they purchased it for something over five thousand dollars, and a trustee's deed was made to Spinks and Rosenbaum. The administration of this estate is yet pending in Humphreys county.

There are really two separate suits presented by this appeal. These suits were consolidated and trial by agreement in the chancery court. The first is the suit of Willis McAllum against Spinks, Rosenbaum, Lumbley, and the trustee in the deed of trust. The second is the suit of Pearl McAllum and the two minor children against the same defendants and the lessee of the land. The relief prayed in both bills is practically the same, namely, that all the deeds be set aside, that the correct amount due under the deed of trust of Lumbley be ascertained, and each complainant seeks to be declared the true and lawful heir of William. Upon the hearing the chancellor dismissed both bills. From which decree this appeal is prosecuted.

It is first necessary to ascertain who is the true and lawful heir, or heirs, of William McAllum, and when this has been done the other questions to be decided by the court are very much simplified. Pearl was William's fifth wife, and William was Pearl's third husband. We shall first deal with the wives of William. The record shows that he married a woman in Kemper county by the name of Neela Nelson, from whom he was divorced in 1889. It is the contention of the appellant that this decree is void: First, because the original summons for Neela, which we have before us, does not now contain the seal of the chancery court; and, second, because there was a defective service or return of the sheriff upon this subpoena. This return reads as follows: "Executed by personal service and copy. Nov. 12th, 1889"—duly signed, etc. Pearl, through her attorneys, purchased from Neela whatever interest she might have in this estate, consequently Pearl claims also because of this purchase through Neela. This court has twice held on direct appeal by a defendant that a writ is bad which does not contain the seal of the court, or a statement of the fact if there were no seal. *Pharis* v. *Conner*, 3 Smedes & M. 87; *Burton* v. *Kramer*, 123 Miss. 848, 86 So. 578. If this were a direct appeal by Neela McAllum, under these authorities the decree of divorce would have to be reversed and the cause remanded. This is not such an appeal; neither is it a direct attack upon the decree, but is in every sense of the word a collateral attack. In this case the original papers in this divorce proceeding that were found in the files of the chancery clerk's office of Kemper county are before the court for inspection. The chancery court's subpoena states that it is "given under my hand and seal of said court, affixed and issued the 8th day of November, 1889." The decree recites that, "This cause coming on for hearing on bill and proof and the court fully understanding the same," it then dissolves the band of matrimony theretofore existing between William and Neela, and was duly signed by the then chancellor of that district. The testimony of Neela was taken in the case. She admits that

the deputy sheriff came to her house and told her something about William getting a divorce from her. She does not remember exactly what was said, nor whether any paper was given her at that time.

The court before hearing this cause upon oral testimony necessarily had to adjudicate the question as to whether or not the defendant had been properly subpoenaed, and, while the decree does not expressly recite the proper service of process upon the defendant, yet, by assuming jurisdiction of the cause and granting the divorce the court necessarily held that the defendant had been properly served with process. If at the time of the service of this subpœna upon the defendant there was no seal of the chancery court upon it, in this collateral attack it will be presumed, in the language of the court in the case of *Cocks* v. *Simmons,* 57 Miss. 196, that—

"The court may have ordered, as was its plain duty," a proper subpœna with the seal upon it, "which may have been returned properly executed; and in the lapse of time which has since occurred it may have been lost from the files. Especially would this be a reasonable presumption when we take into consideration the known carelessness with which court papers are kept during the progress of a cause, and the custom by which they are frequently taken from the clerk's office by the attorneys and other parties interested. But, however this may be, it is well settled that in collateral proceedings such a decision is conclusive of the jurisdiction of the court. Whether the court had the proper evidence before it on which to base such a decision cannot be inquired into collaterally, for that would be a question of error or no error, which manifestly can be entertained only in a court sitting to review the proceedings."

In this case thirty-three years have elapsed since this decree was signed by the chancellor. It would be a legal absurdity; in the language of Judge ARNOLD, it would cut the throat of reason and knock the brains out of common sense, to hold that because this subpœna has not now

upon it the seal of the chancery court this divorce was a nullity and could be thus collaterally attacked.

The case of *Cocks* v. *Simmons, supra,* is copiously quoted from in the opinion of the court in the case of *Hester* v. *Hester,* 103 Miss. 13, 60 So. 6, Ann. Cas. 1915B; 428.

We think the execution of the summons was a substantial compliance with section 1527, Code of 1880. It means that the defendant was personally handed a copy of the subpœna. However it may be, it could only at most be an irregularity, was subject to amendment at the time the cause came on for trial, and cannot be collaterally attacked in this proceedings. The record further shows that Neela herself treated the divorce decree as valid and married again thereafter.

Wife No. 2 of William was named Sue. He married her after being divorced from Neela. She is the mother of the complainant Willis McAllum. William was divorced from her after having married Pearl. He was divorced from Sue in Kemper county a few months before his death. It is contended by the appellant that there is no competent testimony of this marriage. The record, however, abounds with testimony from brothers and relatives of William to the effect that he and Sue were duly married in Kemper county, and lived there a while as husband and wife. Of course, the bill for divorce of William states this fact, and the decree so adjudges. None of this testimony was objected to. In fact it was all competent as proof of this marriage.

In the case of *Henderson* v. *Cargill,* 31 Miss. 409, the proof of marriage was similar to that made in this case, and in the opinion the court in part said: "In all cases, except in actions of crim. con., and prosecutions for bigamy, the fact of marriage may be established by evidence of the acts and declarations of the parties, by proof of the general repute in the family, and by proof of the declarations of deceased persons, who were related to them by blood or marriage."

It is unnecessary to deal with wives Nos. 3 and 4. The record shows, and it is not controverted by the appellant, that the children, Florence and Jab, issue of the fourth marriage, are illegitimate.

The appellants insist that, even though, at the time of the ceremonial marriage between Pearl and William, William was not divorced from Sue, after he obtained the divorce he and Pearl mutually agreed to live together as husband and wife, and in fact did so up until the time of the death of William; that this agreement, entered into in good faith, constituted a valid common-law marriage. It is unnecessary to decide this question, because at that time Pearl was married to a man by the name of Lee Blockett, from whom she was not divorced.

We will now discuss the marriages of Pearl. She was three times married. Her first husband was Lee Blockett. Without any divorce from Lee, she next married a man by the name of Howard. It will, however, be unnecessary to discuss the Howard marriage. Her marriage with Lee Blockett is overwhelmingly shown in the record, and admitted by her. She testified that she had never gotten a divorce from him, and that so far as she knew he had never gotten one from her; that before marrying William she had heard through her mother that some one had informed her that Lee was dead. The appellants introduced some testimony to the effect that there were two Lee Blocketts and two Pearl Blocketts, the men being cousins. The testimony, however, was overwhelming, and the chancellor so found, that the Lee Blockett who married this complainant was not dead. In fact the testimony shows that at the day of the trial of this case in Greenville both Pearl and Lee were in the city, though they failed to appear at the trial, despite the fact that process had been issued for them. The records of the various counties in which both Pearl and Lee had lived from the time of their moving to the Delta until the time of Pearl's marriage to Williams were introduced in evidence, and showed that there had been no divorce between this couple. The pre-

129 Miss.—17.

sumption was, of course, that Pearl's marriage to William was valid, and the burden of proof was upon the defendants to show its invalidity. *Wilkie* v. *Collins,* 48 Miss. 496; *Railway Co.* v. *Beardsley,* 79 Miss. 417, 30 So. 660, 89 Am. St. Rep. 660; *K. of P. Lodge* v. *Tucker,* 92 Miss. 501, 46 So. 51. This burden was met by showing the marriage, that Lee was alive, and that they were not divorced. It follows that because Pearl had a living husband, her marriage with William was void. And it necessarily follows from this that Willis McAllum is the sole and only heir at law of William McAllum, deceased.

As to any fraud or deceit practiced upon Willis McAllum by his attorney, Mr. Spinks, the testimony of Willis himself, as does all of the other testimony in the case, shows that Mr. Spinks consulted and advised with Willis about everything done by him in the matter, from his consultation with Mr. Lumbley as well as his administration of the estate. Whether or not Mr. Lumbley practiced any fraud or deceit in the first instance upon Willis is not a matter of material importance in this case. At the time Mr. Spinks was employed, there was at least a controversy as to that fact between Willis and Lumbley, and Spinks, after obtaining all of the information he could about the matter, advised with Willis and his friend Mr. Rosenbaum as to whether or not they would litigate with Lumbley or compromise the case with him, and they all three agreed that it was better to compromise than litigate. In fact it cannot be said from this record that Mr. Spinks and his associates did not exercise good judgment in making the compromise. Certainly he was guilty of no bad faith, fraud, deceit, or even negligence in the matter.

The sale under the deed of trust was made for the benefit of Willis, as well as Mr. Spinks, and the interest of Willis was in no wise prejudiced by this sale. He is amply protected through his written agreement with Mr. Rosenbaum. Since he is the only party (complainant) who has any interest in the estate, and he cannot complain, it it unnecessary to deal further with this sale.

This record reflects the fact that the acts and doings of Mr. Spinks as administrator are shown by the administration proceedings, and the testimony here does not show that Willis is entitled to any relief whatever in this proceeding.

The learned chancellor of the court below so held, and the decree is affirmed.

*Affirmed.*